UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:19-cr-00376-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Maxmillian Zeferino Esquibel,

    Defendant.

---

**ORDER ON MOTION to VACATE**

---

    Maxmillian Zeferino Esquibel, pro se, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 based upon a claim of ineffective assistance of counsel. The motion is denied.

## BACKGROUND

    Mr. Esquibel is a 33-year old gentlemen currently housed in the Federal Prison Camp at FCI Englewood, Colorado. On September 1, 2020 Mr. Esquibel was convicted by jury trial of being a felon in possession of firearms. On December 4, 2020 he was sentenced to a variant term of imprisonment of 58 months (guideline range 70-87 months) plus three years of supervised release. His direct appeal was dismissed.

    Mr. Esquibel was initially represented by the Federal Public Defender. However, his public defender withdrew due to an "irreconcilable current conflict of interest" that required withdrawal pursuant to the Colorado Rule of Professional Conduct. ECF Nos. 27, 28. The Court

1

then appointed an attorney from the Criminal Justice Act panel, Clifford J. Barnard. ECF Nos. 29, 30.

On July 8, 2020 Mr. Esquibel filed a "Motion to Dismiss Counsel of Record," asserting his right to represent himself but providing no other reason. ECF No. 70. He also stated that he waived or terminated any "stand-by counsel." *Id.*

The Court denied the motion without prejudice but signaled that it would reconsider if Mr. Esquibel still wished to represent himself after considering the Court's advice. ECF No. 71. Specifically, the Court informed Mr. Esquibel (1) that it is rarely a good idea for a defendant in a criminal case to represent himself; (2) criminal law is difficult enough for lawyers, let alone non-lawyers; (3) it is even more difficult to present a case to a jury effectively; (4) Mr. Barnard is a skilled and experienced criminal defense lawyer; (5) Mr. Esquibel had provided no cause to discharge Mr. Barnard; (6) if he later changed his mind and requested another lawyer at government expense, the Court would not grant the request; (7) he was facing up to 10 years in prison if convicted; (8) a hearing was scheduled on motions filed by Mr. Barnard on his behalf, including a motion to suppress evidence, and if he terminated Mr. Barnard he would have to argue the motions and, potentially, cross-examine the government's witnesses on his own; (9) the Court strongly recommended that he discuss these things with Mr. Barnard; (10) Mr. Barnard could also assist in negotiating a disposition if Mr. Esquibel and Mr. Barnard wished to procced that way rather than to go to trial; and (11) the Court believed it to be a bad idea to discharge his lawyer and try to represent himself; that the likelihood of a poor outcome was higher if he represented himself; and that the Court hoped that he would reconsider. *Id.*

Mr. Esquibel promptly refiled his motion to dismiss counsel. ECF No. 73. He indicated that he had considered the Court's advice, but he still wished to represent himself. He did not provide any other reason for discharging counsel. *Id.*

Mr. Barnard then filed an unopposed motion to withdraw, noting that Mr. Esquibel had made an unequivocal and timely demand to represent himself; that he had a constitutional right to do so; and that Mr. Barnard was obligated by Rule 1.16(a)(3) of the Colorado Rules of Professional Conduct to withdraw after being discharged. ECF No. 74 at 1-2. Mr. Barnard noted that because Mr. Esquibel had indicated in his first motion to dismiss counsel that he also did not want stand-by counsel, he was not requesting that new counsel be appointed. However, if Mr. Esquibel wanted stand-by counsel or the Court wished to appoint stand-by counsel, he was willing to act in that role. *Id.* at 2-3. The Court granted his motion to withdraw, noting that Mr. Esquibel had insisted on representing himself, it was contrary to the Court's advice, "but it is his right." ECF No. 75.

Mr. Esquibel now complains that Mr. Barnard's representation was ineffective because he failed to negotiate a plea bargain that he claims was recommended by the Probation Office. ECF No. 181. His theory is that he was "merely three months away from the pivotal 15-year mark" where his Criminal History category would change from Category II, which with an Offense Level of 26 produces a recommended range of 70-87 months, to Category I, where the recommended range would be 63-78 months. *Id.* at 4. He states that he would have taken a plea bargain that with a guideline range of 51-63 months. *Id.* Because the Court ultimately granted a 12-month variance below the actual guideline range of 70-87 month, it would have varied 12 months below 51 months to a sentence of 39 months. *Id.* at 4.[1]

---

[1] Mr. Esquibel also complains about statements he attributes to government counsel in counsel's closing argument at trial. ECF No. 181 at 6. There is no certified transcript of the trial. However, even if the

3

In response, the government represents that it offered Mr. Esquibel the same plea agreement that it previously offered when he was represented by Mr. Barnard, i.e., that it would recommend a sentence at the low end of the guideline range which it estimated to be 87-108 months based on the parties' estimate of an Offense Level 26 and a Criminal History Category III.  ECF No. 184 at 2.  *See also* ECF No. 184-1 and 184-2.  Mr. Esquibel rejected it.  *Id.* at 2-3.  On the eve of trial Mr. Esquibel asked the government, "Is there any plea deal available [but] nothing that has to do with cooperating with the government?"  *Id.* at 3 and ECF No. 184-3.  The response was that he could plead guilty, and if he were interested in cooperating, then depending on the usefulness and accuracy of the information he provided, the government could recommend a lesser sentence.  Mr. Esquibel rejected that.  *Id.*  After Mr. Esquibel was convicted, the Probation Office calculated his guideline range at 70-87 months based on an Offense Level of 26 and a Criminal History Category II.  ECF No. 141-1.  The Probation Office recommended a variant sentence of 48 months.  *Id.*  The Court agreed to a variant sentence but sentenced Mr. Esquibel to 58 months.  ECF Nos. 149-51.

The government's response also corrected Mr. Esquibel's statement of the facts.  The Probation Office did not make any recommendation regarding a plea bargain.  As indicated, it made a sentencing recommendation after trial in the Presentence Investigation Report.  The government's offer carried an estimated 87-108 imprisonment range.  It never offered a plea envisioning sentencing in the 51-63 month range.  ECF No. 184 at 7.  The government adds that Mr. Esquibel's claim that Mr. Barnard failed to "fight" for him, and that Mr. Barnard

---

prosecutor made the statements attributed to him, that is not relevant to whether Mr. Esquibel's counsel, whom he discharged before trial, was ineffective during pre-trial proceedings.  That presumably would have been a matter for Mr. Esquibel's direct appeal.

4

"abandoned" him, has no support in the record and is contrary to the fact that he fired Mr. Barnard and insisted on his right to represent himself. *Id.* at 9-10.

Mr. Esquibel filed a reply. ECF No. 186. He asserts that Mr. Barnard failed to negotiate a plea bargain on his behalf and gave him inaccurate advice. *Id.* at 1-2. He adds that the government's offer that carried an 87-108 guideline range was "erroneous" because he should have been Criminal History category II, not category III, as the Presentence Investigation Report confirmed. *Id.* at 3. He also states that the government attempted "to browbeat and intimidate" him by threatening a guideline range of 121-151 months. *Id.* at 3-4. He concludes that he should be at home with his wife and children, but counsel refused to consider those real-life issues and to fight for his client. *Id.* at 4.

## STANDARD OF REVIEW

To establish ineffective assistance of counsel the petitioner must show both that counsel's performance fell below an objective standard of reasonableness, and that the deficient performance resulted in prejudice to his defense. *Meadows v. Lind,* 996 F. 3d 1067, 1074 (10th Cir. 2021 (citing *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984)). "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id. Strickland,* 466 U.S. at 669). "To demonstrate constitutional deficiency , [the petitioner] must show that counsel's performance was completely unreasonable, not simply wrong." *Meadows*, 996 F.3d at 1075 (quoting *Fox v. Ward,* 200 F.3d 1286, 1295 (10th Cir. 2000)). But even if the petitioner can meet the high burden of establishing deficient performance, he must also establish prejudice. This means showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1075, quoting *Strickland,* 466 U.S. at 694.

**CONCLUSIONS**

Mr. Esquibel has not shown that Mr. Barnard's performance was deficient or "completely unreasonable." The government never made a plea offer that would have, if accepted, resulted in a recommended range of 51-63 months under the Federal Sentencing Guidelines. Mr. Barnard could not compel the government to make such an offer, nor has Mr. Esquibel provided any evidence as to what offers Mr. Barnard sought on his behalf. The Probation Office and the Court correctly calculated the applicable guideline numbers (Offense Level 26, Criminal History Category II, recommended range 70-87 months). That the recommended range turned out to be lower than the range of the government's pre-trial offer does not indicate that Mr. Barnard's representation was deficient. Moreover, when Mr. Esquibel discharged Mr. Barnard, he made no complaint about Mr. Barnard's efforts to negotiate a plea bargain on his behalf. Indeed, he did not complain about Mr. Barnard's representation at all. He only asserted his desire and right to represent himself, and he discharged Mr. Barnard notwithstanding the Court's strong advice to the contrary.

For the same reasons, Mr. Esquibel had not shown prejudice, i.e., that but for Mr. Barnard's allegedly deficient performance, the result in terms of his conviction and sentencing would have been different. The Court granted a 12-month variance below the bottom of the guideline range. The resulting sentence of 58 months was squarely within the 51-63 month range that Mr. Esquibel believes Mr. Barnard should have negotiated for him (notwithstanding that the government didn't make such an offer, and it would not have been a correct guideline calculation in any event). Mr. Esquibel suggests that the Court might have granted the same 12-month variance below the bottom of a 51-63 month range, resulting in a 39-month sentence. That is speculation, at best. The Court determined that 58 months was a fair and appropriate

sentence after considering all the factors listed at 18 U.S.C. § 3553(a) in addition to the applicable guideline range.

## ORDER

For the reasons discussed in this order, defendant's motion to vacate his sentence, ECF No. 181, is DENIED.

Dated: April 18, 2022.

By the Court

*[signature]*

_____

R. Brooke Jackson

U.S. District Court Judge